COWEN, Circuit Judge,
dissenting.
Because the record does not support the District Court’s determination that Smith acted with reckless disregard for the truth when he incorporated paragraph 7(c) into the warrant affidavit, I respectfully dissent.
As the majority correctly notes, we have previously explained that “[a]n assertion is made with reckless disregard when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.” Wilson v. Russo, 212 F.3d 781, 788 (3d Cir.2000) (internal quotation marks and citation omitted). The majority also properly characterizes the recklessness inquiry as a subjective test, with the ultimate focus remaining on whether a finder of fact can either directly find or “infer a subjectively reckless state of mind.” (Maj. Op. at 643.) “In applying the reckless disregard test to assertions, we have borrowed from the free speech arena and equated reckless disregard for the truth with a ‘high degree of awareness of the state *651 ments’ probable falsity.’ ” Wilson, 212 F.3d at 788 (citation omitted).
The majority concludes that the District Court’s recklessness determination was proper because, in its view, the record supports the District Court’s finding that Smith “made up Paragraph 7(c) out of whole cloth.” (Maj. Op. at 646.) According to the majority, “[t]he fact that a statement is a fabrication or a figment of a speaker’s imagination is sufficient reason for finding that it was not made in good faith — i.e., that it was made with (at least) reckless disregard for the truth — even if the speaker testifies that he believed the statement to be true.” (Id. at 649.) While this statement of law is not incorrect in the abstract, the District Court in this case never specifically found that Smith had “fabricated” the disputed evidence or cut it “out of whole cloth.”
The District Court’s decision holds that Smith acted with reckless disregard for the truth because he failed to take any steps to verify his understanding of the evidence, which was based solely on his telephone conversations with Lash; in the District Court’s view, for Smith “[t]o have asserted the existence of [non-existent] evidence in the face of readily available access to actual evidence to the contrary was a reckless disregard for the truth.” United States v. Brown, 647 F.Supp.2d 503, 513 (W.D.Pa.2009). But as even the majority acknowledges, suppression is not warranted when an officer negligently includes a false assertion in a warrant affidavit, and the failure to conduct a full investigation does not constitute evidence of recklessness. See, e.g., Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (“[Allegations of negligence or innocent mistake are insufficient” to warrant suppression); see also Herring v. United States, 555 U.S. 135, 129 S.Ct. 695, 703, 172 L.Ed.2d 496 (2009) (“Under Franks, negligent police miscommunications in the course of acquiring a warrant do not provide a basis to rescind a warrant and render a search or arrest invalid.”); United States v. Hammett, 236 F.3d 1054, 1058-59 (9th Cir.2001) (holding that misstatement in warrant affidavit was not made with reckless disregard for the truth because it was highly probable that there was a miscommunication between the investigating officer and the officer who drafted the affidavit); United States v. Dale, 991 F.2d 819, 844 (D.C.Cir.1994) (“[I]n general, the failure to investigate fully is not evidence of an affiant’s reckless disregard for the truth.”).
Returning to the majority’s “fabrication” theory, such a characterization has no real basis in the record (and, to the extent the District Court’s decision could be construed as making any “fabrication” finding, such a finding would be clearly erroneous at least in the absence of any adverse credibility determination against Smith himself). For instance, although Smith ultimately acknowledged at the hearing that “Trooper Lash never told [him] that the Jetta met up with the school van,” (App. 241), he also repeatedly testified that he had previously believed that the information in the affidavit was accurate at the time he drafted it. More significantly, he indicated that (in the words of the District Court itself) “[h]e based his statements in the affidavit on discussions which he had previously had with Trooper Lash.” 647 F.Supp.2d at 508. The District Court never specifically made a credibility finding against Smith or otherwise rejected any of his sworn testimony.
Accordingly, it is incorrect to assert that Smith had no basis or reason whatsoever for believing that the information included in the affidavit was true at the time the affidavit was drafted. He relied at that point in time on what he had remembered *652 (and perhaps had inferred) from his prior conversations with Lash. As it turns out, he was wrong and acted negligently when he should have read the reports of Lash. However, Smith clearly did not irrationally “believe something to be true (let alone swear in an affidavit that it is ‘true and correct to the best of my knowledge, information, and belief) without an affirmative justification.” (Maj. Op. at 646.) It is actually implausible to surmise that he would have acted in such an unreasonable and even surprising manner given that the correct facts would have been more than sufficient to establish probable cause.[1] See Illinois v. Gates, 462 U.S. 213, 236-37, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (explaining that “so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more”) (internal quotation marks and citation omitted). In particular, several witnesses saw a silver car parked where the van was later discovered, and one of those witnesses — who specifically identified the car as a Volkswagen Jetta — saw it again at 9:25 a.m. traveling away from the vicinity of the parked van.
I would reverse the order of the District Court and, accordingly, respectfully dissent.

. I make this point in the limited context of assessing Smith's state of mind at the time the affidavit was drafted.